UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FREDERICK MARC COOLEY,<br><br>　　　　　　　Plaintiff,<br>　v.<br>J. MARSHAL, et al.,<br><br>　　　　　　　Defendants. | Case No. 2:09-cv-00559-MMD-GWF<br><br>ORDER<br><br>(Defs' Motion for Judgment as a Matter of Law – dkt. no. 209; Plf's Motion for New Trial – dkt. no. 221) |

**I.　SUMMARY**

The jury returned a verdict in favor of Plaintiff Frederick Marc Cooley against Defendant Sharon Meads on one count. (Dkt. no. 212.) Before the Court are Defendants Karen Coyne and Sharon Meads' (collectively "City Defendants") Motion for Judgment as a Matter of Law ("Motion for Judgment") (dkt. no. 209)[1] and Plaintiff's Motion for New Trial ("Motion for New Trial") (dkt. no. 221). For the reasons stated below, both motions are denied.

**II.　BACKGROUND**

Plaintiff alleged that while he was detained at the Las Vegas Detention Center ("Detention Center"), he was physically removed from a holding cell and handcuffed to an intake bench for approximately twenty-four (24) hours, and that during this time he was denied access to a bathroom, causing him to urinate on himself. (Dkt. no. 70.) City Defendants are supervisors at the Detention Center.

---

[1] This motion was filed before the jury returned its verdict.

The parties tried this matter before a jury, beginning on November 18, 2014, and concluding the next day. At the conclusion of the trial, the jury returned a verdict in favor of Plaintiff against Defendant Meads and awarded damages in the amount of $10,000. (Dkt. no. 212.) The jury found in favor of the other Defendants. (*Id;* dkt. no. 214.)

Before this case was submitted to the jury, City Defendants filed their Motion for Judgment pursuant to Fed. R. Civ. P. 50(a). (Dkt. no. 209.) The Court deferred ruling on that motion. (Dkt. no. 210.) Following the jury's verdict, Plaintiff filed an opposition to the Motion for Judgment (dkt. no. 219) and Defendant Meads filed a reply (dkt. no. 220).

On December 12, 2014, Plaintiff filed a Motion for New Trial pursuant to Fed. R. Civ. P. 59, asserting that the jury's instructions were erroneous. (Dkt. no. 221.) Defendants Las Vegas Metropolitan Department ("LVMPD"), Officer Joseph Marshall, and Officer Ty Muncie (collectively "LVMPD Defendants") filed an opposition (dkt. no. 223) and City Defendants also filed a separate opposition (dkt. no. 224). Plaintiff filed a reply. (Dkt. no. 225.)

**III.  DISCUSSION**

    **A.  Motion for Judgment**

        **1.  Legal Standard**

Under Fed. R. Civ. P. 50, a party must make a Rule 50(a) motion for judgment as a matter of law before a case is submitted to the jury. *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). "If the judge denies or defers ruling on the motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b)." *Id.* Further, "a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." *Id.*

The Court deferred ruling on City Defendants' Rule 50(a) motion and the jury returned a verdict against Meads. Meads filed a reply in further support of the Motion for Judgment following the jury's verdict, highlighting the arguments from the Motion for Judgment that relate specifically to Meads and the jury's verdict. The Court will thus construe the Motion for Judgment as a Rule 50(b) motion.

Judgment as a matter of law is warranted "'when the evidence presented at trial permits only one reasonable conclusion.'" *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008) (quoting *Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002)). "[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 150 (2000). Rather, the Court "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Go Daddy Software, Inc.*, 581 F.3d at 961 (citation omitted).

Under Rule 50(b), a jury's verdict is reviewed for substantial evidence. *Id.* (citing *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 888 (9th Cir. 2002)). "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (citation omitted).

**2.    Analysis**

Meads argues she is entitled to qualified immunity because she: (1) did not commit any constitutional violation; and (2) no clearly established law prohibited placing Plaintiff on the bench. (Dkt. no. 220 at 1-2.)

To determine whether an individual officer is entitled to qualified immunity, a court must make a two-step inquiry: (1) whether the facts shown make out a violation of a constitutional right; and (2) if so, whether the constitutional right was clearly established as of the date of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it." *City and County of San Francisco, Cal. v. Sheehan,* 135 S.Ct. 1765, 1774 (2015). The first step of the inquiry is a question of fact, and the second is a question of law. *Tortu v. Las Vegas Metro. Police Dep't.*, 556 F.3d 1075, 1085 (9th Cir. 2009).

///

### a. Violation of Fourteenth Amendment Right

Plaintiff asserts a claim under 42 U.S.C. § 1983 against Meads for depriving him of his rights under the Fourteenth Amendment when he was restrained on a bench in the booking area and denied access to a restroom.

The Court first determines whether Plaintiff has "shown" facts that make up a violation of a constitutional right. In the context of a Rule 50(b) motion, a jury has already determined that a constitutional violation took place. The Ninth Circuit has previously found that this fact alone is sufficient to deny qualified immunity as to the first step. *See A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 456 (9th Cir. 2013) ("Plaintiffs have done more than 'show' that [Defendant] violated their due process rights — they proved it to a jury. Therefore, the jury's verdict against [Defendant] is sufficient to deny him qualified immunity on this prong of the analysis.") There is also clear substantial evidence on record to support the jury's finding of a constitutional violation.

The Fourteenth Amendment's Due Process Clause applies to pretrial detainees such as Plaintiff.[2] *Simmons v. Navajo Cnty. Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (citing *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979)). The standards that apply to Eighth Amendment cruel and unusual punishment claim similarly apply to a Fourteenth Amendment claim. *Simmons*, 609 F.3d at 1017 (citation omitted).Therefore, to bring a valid § 1983 claim a detainee must show: (1) that he or she was deprived of something sufficiently serious; (2) the deprivation occurred with deliberate indifference to plaintiff's health or safety; and (3) defendants' actions were the actual and proximate cause of plaintiff's injuries. *Lemire v. Cal. Dep't of Corrs. and Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citations omitted). "A deprivation is sufficiently serious when the prison official's act or omission results in the denial of the minimal civilized measure of life's necessities." *Id.* (citing *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009); *Farmer v.*

---

[2] The rights guaranteed under the Due Process Clause include protecting "a pretrial detainee from the use of excessive force that amounts to punishment," *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989), as well as from "conditions and restrictions of pretrial detainment" that amount to punishment, *Bell*, 441 U.S. at 533.

*Brennan*, 511 U.S. 825, 834 (1994)) (internal quotation marks omitted). "To demonstrate deliberate indifference, a plaintiff must show defendants 'kn[e]w [ ] of and disregard[ed]' the substantial risk of harm, but the officials need not have intended any harm to befall the inmate; 'it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Lemire*, 726 F.3d at 1074 (quoting *Farmer*, 511 U.S. at 842) (alteration in original).

A supervisor may be held liable under § 1983 "if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lemire*, 726 F.3d at 1074-75 (citing *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003)) (internal quotation marks omitted). The causal connection can include: (1) the supervisor's "own culpable action or inaction in the training, supervision, or control of subordinates;" (2) "their acquiescence in the constitutional deprivation of which a complaint is made;" or (3) their "conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

According to Meads' testimony at trial, she was working as a shift sergeant on March 13, 2009, the day that Plaintiff was brought into booking, until 6:00 pm. Meads stated that she was *not* involved in the initial decision to remove Plaintiff from his cell and restrain him to a bench but was informed of the situation by her officers.[3] Meads signed the order to place Plaintiff in administrative segregation. (Tr. Ex. 16.) Meads testified that, pursuant to her order, Plaintiff was placed on the bench at 2:00 pm. She also testified that she spoke to him at 2:30 pm and was informed at some point that Plaintiff

---

[3] The Detention Center's policy requires that detainees subject to administrative segregation be restrained to a bench when isolation cells are not available due to shortage of isolation cells. This practice appears to be internally inconsistent as it requires that a detainee be restrained to a bench when no isolation cell is available, but directs that a detainee who asks to go to the bathroom be escorted to an empty isolation cell. (Tr. Ex. 51.) Plaintiff has not asserted a claim against the City of Las Vegas under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). While the Court is concerned about the constitutionality of the Detention Center's practice of restraining detainees to a bench as a solution to the shortage of isolation cells, the question of whether this practice passes constitutional scrutiny is not before the Court.

1  urinated on the floor. She further stated that she spoke to Plaintiff again before her shift
2  ended at 6:00 pm. The topic of that conversation was an available isolation cell. Meads
3  testified that she was trying to get Plaintiff to go into that cell but that he calmly refused.
4  She recognized that it was odd that Plaintiff refused the available isolation cell given that
5  he previously had issues going to the bathroom. She stated that she did not want to
6  force Plaintiff into the available cell because he was calm and a separate emergency
7  situation could have arisen that would have required somebody else to use the available
8  cell. The observation logs maintained by the Detention Center indicated at around this
9  time Plaintiff was calm and sitting. (Tr. Ex. 11.) During the conversation with Plaintiff,
10 Meads informed him that if he did not move into the available cell then he could still be
11 on the bench when she returns to work the next morning. Meads returned at 5:00 am the
12 next day and Plaintiff was still restricted to the bench.
13        Plaintiff testified that after he was removed from his cell, he was chained to a
14 bench in the intake area. The length of the chain was short and restricted his movement
15 such that he could not stand up, stretch or move to pull down his pants when he could
16 not resist the urge to urinate. Plaintiff repeatedly asked to use the bathroom but none of
17 the officers being supervised by Meads responded to his requests. He further stated that
18 he urinated on himself once he felt as though he could no longer hold it in. After this
19 occurred, Meads came and spoke to him but did not discuss the fact that he had
20 urinated on himself. He testified that Meads only asked why he was there, why he was
21 saying rude things to the officers and why he would not submit to a medical screening.
22 He told Meads not to come over and ask him about what he had said to the officers
23 when they had just put him in a position where he urinated on himself. He testified that
24 he didn't see Meads again until the next day but that in the interim he could not stand up
25 or move, he could not lie down, he was uncomfortable, his clothes were wet with urine,
26 his foot went to sleep, his back ached and the bench seat was made of metal so his
27 bottom was tender when he was finally moved. He said that the next morning, after
28 Meads had returned, he was asked if he wanted to move to a cell and he said yes. He

was then moved to an observation room, his clothes were taken, and he was given a jail uniform. The observation logs indicate he was moved at 5:15 am. (Tr. Ex. 11.) While Plaintiff's testimony is not clear as to the length of time he was chained to the metal bench, the observation logs showed he was chained for at least 15 hours, from 2:00 pm to 5:15 am, and approximately 12 of those hours occurred after Meads made the decision not to transfer to Plaintiff to an available cell. Plaintiff testified that the whole ordeal was uncomfortable and humiliating, and that he never stopped thinking about it. He testified that the entire time he was restricted to the bench, he was never given an opportunity to calm down and use a restroom.

The above evidence was substantial enough for the jury to conclude that Plaintiff was denied "the minimal civilized measure of life's necessities" by being restricted to sitting on a metal bench for at least 12 hours without a penological purpose. Further, there is substantial evidence to support the jury's determination that Meads demonstrated deliberate indifference to possible physical or emotional harm to Plaintiff by choosing to not move Plaintiff into an available cell despite her awareness that Plaintiff had bathroom issues, had urinated on himself and would likely remain on that bench for at least another 12 hours until she arrived the next morning. Lastly, there is substantial evidence for the jury to conclude that 12 hours of being restricted to the bench in urine-soaked clothing without the ability to stand up caused Plaintiff to suffer emotional distress and physical discomfort. The constitutional violation at issue was due to Meads' own culpable action and conduct in deciding not to move Plaintiff to an available isolation cell.

### b.    Clearly Established Law

Next, the Court must determine whether the constitutional right was clearly established as of the date of the alleged misconduct.

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Saucier v. Katz*,

7

533 U.S. 194, 206 (2001)). "Reasonableness is not a demanding standard" and the law "was sufficiently clear if it gave 'fair warning' to an officer that his conduct was unconstitutional." *A.D.*, 712 F.3d at 454 (citation omitted). An official action need not have been previously declared unlawful. *Hope*, 536 U.S. at 739. Rather, in light of pre-existing law, the unlawfulness must be apparent. *Id.* "This inquiry must be undertaken in light of the case's specific context, not as a broad general proposition." *Saucier*, 533 U.S. at 201.

Meads contends that there was no clearly established law prohibiting placing Plaintiff on the bench. However, Meads construes the rights implicated here too narrowly. The issue is whether a reasonable officer could have believed that it was constitutional to restrain a pre-trial detainee to a metal bench for up to 12 hours where the detainee's movement would be severely restricted without any penological justification. The Court finds that the law is clearly established that such practice contravenes a detainee's Fourteenth Amendment rights.

The Supreme Court recognized in *Hope* that it was an Eighth Amendment violation to handcuff plaintiff to a hitching post for a 7-hour period where safety concerns had been abated and there was no emergency situation. *Hope*, 536 U.S. at 738. The Supreme Court stated the following:

> As the facts are alleged by Hope, the Eighth Amendment violation is obvious. Any safety concerns had long since abated by the time petitioner was handcuffed to the hitching post because Hope had already been subdued, handcuffed, placed in leg irons, and transported back to the prison. He was separated from his work squad and not given the opportunity to return to work. Despite the clear lack of an emergency situation, the respondents knowingly subjected him to a substantial risk of physical harm, to unnecessary pain caused by the handcuffs and the restricted position of confinement for a 7-hour period, to unnecessary exposure to the heat of the sun, to prolonged thirst and taunting, and to a deprivation of bathroom breaks that created a risk of particular discomfort and humiliation. The use of the hitching post under these circumstances violated the "basic concept underlying the Eighth Amendment[, which] is nothing less than the dignity of man."

*Id.* at 738.

///

As in *Hope*, there were no safety or emergency concerns that warranted further restriction of Plaintiff to the bench by the time Meads offered to move Plaintiff to an available isolation cell. In this case, evidence at trial showed that Plaintiff was restrained to a bench at around 2:00 pm because he made hostile comments to staff and no isolation cells were available for administrative segregation. However, when Meads spoke to Plaintiff several hours later, an isolation cell was available and Plaintiff had calmed down. Even so, Meads decided not to move Plaintiff into the available cell. As a result, Plaintiff was not moved off the bench and into a cell or given clean clothes for another 12 hours. The evidence at trial showed that there was a policy in which disruptive detainees were restricted to benches due to lack of isolation space for safety and security reasons. But isolation space was available in this case, and Meads testified that Plaintiff was calm when she spoke to him.[4] Meads' decision to not move Plaintiff into the available cell was based on speculation as to a potential fight with Plaintiff to get him into the cell and the possibility that another emergency may arise that might require use of that cell. Certainly the potential for such scenario always exists and it does not constitute the sort of emergency that would warrant the punitive treatment of continuing to restrain Plaintiff.[5]

Like the petitioner in *Hope*, Plaintiff was placed in a restricted position of confinement for at least 7 hours as he was confined to sitting on a metal bench for approximately 12 hours after Meads decided not to move him into an available cell. Meads knew that Plaintiff would possibly be in that position for 12 hours until she

---

[4] This case is thus distinguishable from *LeMaire v. Mass*, 12 F.3d 1444, 1460 (9th Cir. 1993) because the prison officials in that case used in-cell restraints in "strict compliance with existing prison regulations . . . ." In this case, the relevant policy appears to contemplate restriction to a bench only when there is no isolation space available.

[5] There is evidence in this case that Plaintiff's treatment was punitive. Plaintiff testified that in his conversation with Meads before she decided to leave him restrained to the bench, Meads discussed Plaintiff's statements to the other officers and his refusal to submit to a medical screening. Meads also testified that during that conversation Plaintiff probably made her aware of the fact that he was not being allowed to use the restroom.

returned to work the next morning. As in *Hope*, Meads was also aware of circumstances that created a risk of particular discomfort and humiliation, including the fact that Plaintiff had trouble gaining access to a toilet, had urinated on himself, and was sitting in clothes soaked with urine. She made the decision to further restrict Plaintiff's access to bathroom facilities by not moving him into an available cell with a toilet. It is therefore clear that a reasonable officer, having read *Hope*, would understand Meads' actions to be a constitutional violation. *See Sheehan,* 135 S.Ct. at 1777.

For the foregoing reasons, the Court determines that Meads is not entitled to qualified immunity and her Motion for Judgment is therefore denied.

### B. Motion for New Trial

Plaintiff moves for a new trial pursuant to Fed. R. Civ. P. 59 on grounds that the Court gave erroneous jury instructions. (Dkt. no. 221.) If a party alleges that an erroneous jury instruction was given, the erroneous instruction is not grounds for granting a new trial unless the error affects the essential fairness of the trial and a new trial is necessary to achieve substantial justice. *See Gulliford v. Pierce County*, 136 F.3d 1345, 1350 (9th Cir. 1998) ("[i]f a jury instruction is erroneous, we will reverse the judgment unless the error is more probably than not harmless") (alteration in original) (internal quotation marks and citation omitted); *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) ("It is equally clear that erroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial.") "The grant of a new trial is confided almost entirely to the exercise of discretion on the part of the trial court." *Id.* at 186 (internal quotation marks and citation omitted).

First, Plaintiff argues that it was error for the Court to not give Plaintiff's requested "bad faith" jury instruction. The Court did not give Plaintiff's proposed instruction because it did not comport with the law. Plaintiff's proposed instruction would have instructed the jury that Plaintiff *must* demonstrate that the LVMPD officers acted in bad faith. (Dkt. no. 207 at 1-2.) In *Davis v. City of Las Vegas*, 478 F.3d 1048 (9th Cir. 2007), the issue of "bad faith" only arises in the context of immunity, which was not an issue in this case.

The jury was instructed on when police officers are able to arrest pursuant to NRS 484A.730. Plaintiff was informed that he could argue that he was arrested because of the officers' bad faith, but an instruction that a finding of bad faith was required would have been contrary to law.

Second, Plaintiff argues that the jury could not have found Coyne liable because they were not instructed on Plaintiff's theory that she acquiesced to the decision to restrain Plaintiff to a bench. Plaintiff is incorrect. The jury was provided Model Civ. Jury Instr. 9th Cir. 9.3 on a supervisor's liability under § 1983, to which the parties consented and jointly proposed. That instruction stated that Coyne could be held liable if she "knew, or reasonably should have known, that her subordinates were engaging in these acts and that their conduct would deprive the plaintiff of these rights" and she "failed to act to prevent her subordinates from engaging in such conduct." To the extent that Plaintiff is arguing that the jury should have been instructed that Coyne could be held liable for acquiescing after the fact, such an instruction would be contrary to law. *See Lemire*, 726 F.3d at 1074–75.

Lastly, Plaintiff argues that the jury should have been instructed on punitive damages. A "jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005). The Court determined that no such evidence was presented in this case. Plaintiff does not present any evidence or case law that would warrant a different conclusion.

For the foregoing reasons, Plaintiff's motion for a new trial is denied.

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions.

1 It is hereby ordered that Defendants' Motion for Judgment as a Matter of Law (dkt. no. 209) is denied.

It is further ordered that Plaintiff's Motion for New Trial (dkt. no. 221) is denied.

DATED THIS 31st day of July 2015.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE